UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
BROTHERHOOD OF LOCOMOTIVE  :
ENGINEERS & TRAINMEN, a Division of the  :
Rail Conference of the International Brotherhood  :
of Teamsters,  :  **MEMORANDUM AND ORDER**
 :  07 CV 0934 (DLI) (MDG)
                   Petitioner,  :
 :
    -against-  :
 :
THE LONG ISLAND RAIL ROAD COMPANY,  :
 :
                  Respondent.  :
-----------------------------------------------------------------x

**DORA L. IRIZARRY, United States District Judge:**

      Petitioner Brotherhood of Locomotive Engineers and Trainmen, a Division of the Rail Conference of the International Brotherhood of Teamsters (the "Union") seeks enforcement of an arbitration award issued by an arbitration panel, referred to as an "adjustment board" or a "public law board," established pursuant to the Railway Labor Act, 45 U.S.C. §§ 151 *et seq.* (the "RLA"). Respondent Long Island Rail Road Company (the "LIRR") moves to dismiss the Union's action for lack of subject matter jurisdiction.

      For the reasons set forth below, the LIRR's motion to dismiss is denied, and the Union's petition to enforce the arbitration award is granted.

**I.     Background**

      The following relevant facts appear to be undisputed and are taken from the Union's petition for enforcement and the parties' submissions and exhibits. The Union is a national labor organization and the duly authorized bargaining representative, under the RLA, for persons in the employ of the LIRR as locomotive engineers. The LIRR is a company in the business of transporting

1

passengers and property by railroad in interstate commerce and of operating rail equipment and facilities. The labor relations of railroads operating in interstate commerce, including the LIRR, and the unions representing such railroads' employees are governed by the RLA. *See United Transp. Union v. Long Island R.R. Co.*, 455 U.S. 678, 682 (1982). The Union and the LIRR are parties to a collective bargaining agreement (the "Agreement") that governs the rates of pay, rules, and working conditions of the LIRR's engineers. *See* 45 U.S.C. § 152 First (stating that "[i]t shall be the duty of all carriers, their officers, agents, and employees to exert every reasonable effort to make and maintain agreements concerning rates of pay, rules, and working conditions").

Article 28 of the Agreement describes the procedure by which LIRR employees may submit claims for compensation allegedly due them. According to Article 28(c), once an employee submits a claim for compensation pursuant to the specified procedures, if the LIRR does not notify the employee and the General Chairman of the Union of its denial of the claim, in writing, within thirty calendar days from the date the claims were presented, "the claim shall be allowed."

Between 1998 and 2004, LIRR engineers filed numerous claims in accordance with the procedures set forth in Article 28 of the Agreement. In many instances, the LIRR did not notify the employees or the General Chairman of the Union in writing, within the thirty-day time limit, that the claims were denied. Accordingly, pursuant to Article 28(c) of the Agreement, the Union demanded that those claims be allowed. The LIRR refused to allow the claims.

Although the parties continued to correspond and confer, the parties were unable to come to an agreement on the disputed claims. In accordance with Article 28(h) of the Agreement, the parties submitted their dispute for resolution by Public Law Board 6846 ("PLB 6846" or the "Board"), a special board of adjustment created by the Union and the LIRR, pursuant to Section 3 Second of the

RLA. PLB 6846 was comprised of three members: one appointed by the Union, one appointed by the LIRR, and one appointed by the National Mediation Board to serve as the Neutral Member and Chairman. Boston College Professor David P. Twomey was appointed by the National Mediation Board to serve as the Neutral Member and Chairman of the Board. According to Section 8 of the agreement establishing PLB 6846, the Board's decision would be final and binding on both parties.

The parties submitted the following questions to the Board:

1. Did the Carrier [LIRR] deny the various claims for compensation submitted by Engine Service Employees between 1998 and 2004 in accordance with the mandates of Article 28(c) of the collective bargaining agreement between the Long Island Rail Road and the Brotherhood of Locomotive Engineers?

2. If the answer to Question No. 1 is in the negative, are the employees so affected entitled to payment pursuant to Article 28(c)?

Both parties filed written submissions setting forth their respective positions. The LIRR's submission described "the issue before the Board today" to be "the Organization's demands for payment of approximately $1.3 million (in payment for over 7,500 claims for compensation allegedly not denied in a timely fashion by Carrier)." The Union provided PLB 6846 with three sample or "pilot" claims from the 7,500 disputed claims. At a hearing before the Board, both sides had the opportunity to engage in oral argument.

On August 18, 2006, PLB 6846 issued a final award in favor of the Union (the "Award"), holding that "the Carrier did not timely deny the claims for compensation filed between 1998 and 2004 consistent with Article 28 (c); the claims of those not so notified shall be allowed." The Board reasoned as follows.

> The Carrier had an obligation under paragraph 28 (c) to notify the claimants and the General Chairman of the denials "in writing, not later than thirty (30) calendar days from the date the claims were presented." This was not done in these pilot cases. The Organization [Union]

> has satisfied every step in the progression set forth in Article 28. . . .
>
> The Carrier states its view that no payments are due the Claimants because of an agreement by the parties to waive time limits. . . . An arrangement at the local level, in which time limits are waived, should have been approved by the individuals with authority to make agreements and/or understanding, the General Chairman and the Carrier's Highest Designated Officer and should have been memorialized in writing, setting forth the essential elements of the arrangement and its' [*sic*] duration.
>
> This Board is compelled to follow the Agreement of the parties. We must sustain these claims because the contract specifically requires this remedy. The Carrier's laches argument is devoid of merit; the Organization preserved its contractual rights in this case.

The Board instructed the LIRR to comply with the Award within thirty days of the date of the Award.

To date, the LIRR states that it has paid a portion of the amount due as required by the Award, but has refused to pay certain categories of claims that it argues are not encompassed within the scope of the Award. The Union now seeks judicial enforcement of the Award, pursuant to Section 3 First (p) of the RLA, 45 U.S.C. § 153 First (p), and Section 3 Second of the RLA, 45 U.S.C. § 153 Second. According to the Union, there are approximately 7,415 claims involved in this dispute, totaling about $1.3 million.

## II. Discussion

The LIRR styles this dispute a disagreement over the interpretation of an adjustment board award, over which this court has no subject matter jurisdiction. According to the LIRR, it is unclear whether certain categories of claims are encompassed within PLB 6846's final Award. The LIRR reasons as follows: four adjustment board awards[1] decided prior to PLB 6846's Award (the "Prior

---

[1] The LIRR identified the prior adjustment board awards as follows: Special Board of Adjustment 990 (Howard C. Edelman, Neutral), which issued Awards 33 and 34 (dated October 16, 2000) and Award 43 (dated November 21, 2005); and Public Law Board No. 6517 (Thomas J. Germano, Neutral), which issued Award 5 (dated July 29, 2004).

4

Awards") had determined that certain categories of claims were not allowable. PLB 6846 focused on claims for compensation filed between 1998 and 2004 that were not denied in a timely fashion under Article 28(c) of the Agreement between the parties, and held that such claims were to be allowed. PLB 6846's Award did not, however, distinguish between the claims for compensation that were covered by the Prior Awards–*i.e.*, those claims falling in categories that prior adjustment boards had determined were not allowable–and the remainder of the claims filed between 1998 and 2004 that were untimely denied. As there appears to be overlap between claims for compensation covered by PLB 6846's Award and those covered by the Prior Awards, there seems to be a conflict between PLB 6846's Award and the Prior Awards. Thus, the LIRR argues, PLB 6846's Award requires interpretation as to whether it supersedes the Prior Awards or whether it is to be read consistently with them. Such a dispute, the LIRR argues, is outside the ambit of this court's jurisdiction.[2]

The LIRR's elaborate argument, however, merely attempts to obfuscate the simple principles that are applicable here. First, an adjustment board does not have an absolute duty to follow arbitral precedent, and, therefore, an award that is inconsistent with a prior award does not necessarily invalidate either award. *See Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 32 (2d Cir. 1997) ("We note that prior statements of this and other circuit courts indicate that inconsistent

---

[2]The LIRR offers case law suggesting that a disagreement over the interpretation of an adjustment board award is a "minor" dispute that falls within the exclusive jurisdiction of an adjustment board, and not within the jurisdiction of a court of law. *See Bhd. of Maint. of Way Employees v. Burlington N. R.R. Co.*, 24 F.3d 937, 938 (7th Cir. 1994) (stating that a "disagreement about the meaning of an award amounts to [a] disagreement about the meaning of the underlying collective bargaining agreement," which, under the RLA, is a "'minor dispute[]' that the parties and the Board must resolve without judicial aid or interference"); *see also Baylis v. Marriott Corp.*, 843 F.2d 658, 662 (2d Cir. 1988) (stating that jurisdiction over a dispute concerning "an interpretation of the terms of a collective bargaining contract . . . lies exclusively with the appropriate Adjustment Board. Jurisdiction of federal courts . . . is limited to review of the decisions of the Adjustment Board.").

awards will ordinarily be upheld where they are both grounded in the collective bargaining agreement."); *see also N.Y. Hotel & Motel Trades Council v. Hotel St. George*, 988 F. Supp. 770, 777 (S.D.N.Y. 1998) ("[A]rbitrators have broad discretion to determine the precedential or preclusive effect, if any, to be accorded an issue or claim decided in a prior arbitration."). Therefore, the fact that PLB 6846's Award here appears to conflict with the Prior Awards does not prevent this court from enforcing PLB 6846's Award as it has been set forth.

Second, the LIRR raises an argument here, which amounts to a *res judicata* argument, that it did not raise before PLB 6846 below. The argument is that the Prior Awards are, in effect, *res judicata* with respect to the claims that those Prior Awards deemed not allowable. In the court's view, the argument is not an unreasonable one (notwithstanding that, as is clear from the case law cited in the preceding paragraph, adjustment board awards do not necessarily have preclusive effect on later adjustment board determinations). However, the insuperable problem here is that the LIRR could have raised this argument before PLB 6846 but, for some inexplicable reason, failed to do so. The LIRR offers a meager explanation for its failure in this regard. It claims that

> other than the three specific pay claims that the BLET [Union] referred to as "pilot claims" which were presented for the sole purpose of defining their position that there was a time limit violation of the collective bargaining agreement in the processing of some 7,400 pay claims, the LIRR never received any indication from the BLET regarding the specific claims they were presenting to [the Board]. There was no indication to the Board or to the LIRR that the BLET would view prior awards, such as the other four awards in question now that dealt with substantive work rule matters, as no longer in effect. . . . The BLET did not provide the LIRR or the Board with a breakdown of the substantive aspects of those thousands of claims. . . . [T]he LIRR could not fathom that after [the Award] was rendered the BLET would interpret that Award to mean that four prior adjustment board awards denying four categories of pay claims as lacking substantive merit had no effect, that is, that "no pay" claims would be treated as "pay claims."

(Drayzen Aff. ¶¶ 2-3, 5, June 13, 2007.) Clearly, the LIRR, having originally received its

6

employees' claims for compensation, was in possession of the claims in question. An examination of all of the claims untimely denied from 1998 to 2004 likely would have revealed that the Union sought payment on claims apparently covered by the Prior Awards. Alternatively, the LIRR could have–and should have–requested that the Union identify for the LIRR the claims for which it was demanding payment. It was the LIRR's responsibility to seek out this crucial information. Indeed, the court can see no reason why the LIRR purported to dispute before the Board, as it stated, "over 7,500 claims for compensation" amounting to "approximately $1.3 million" without first scrutinizing each of those claims. The LIRR's failing here simply cannot be pawned off on the Union. Accordingly, the LIRR is foreclosed from raising the *res judicata* argument now for the first time. *See N.Y. Hotel & Motel Trades Council*, 988 F. Supp. at 777 (holding that "a party may not oppose confirmation of an arbitration award on res judicata grounds where that argument was not presented"); *Enter. Ass'n Metal Trades Branch Local Union 638 v. Empire Mech., Inc.*, No. 91 Civ. 5014 (CSH), 1992 WL 84689, at *2 (S.D.N.Y. Apr. 9, 1992) (stating that "[a]ffirmative defenses affecting the merits of an arbitrable claim," including res judicata, are "for the arbitrators at the hearing, and . . . not for the Court on a petition to confirm the award").

In any event, the LIRR's argument that there is an ambiguity in PLB 6846's Award requiring interpretation is without any merit. In the LIRR's written submission to PLB 6846, it described "the issue before the Board today" to be "the [Union]'s demands for payment of approximately $1.3 million (in payment for over 7,500 claims for compensation allegedly not denied in a timely fashion by [the LIRR])." When PLB 6846 held that "the [LIRR] did not timely deny the claims for compensation filed between 1998 and 2004 consistent with Article 28 (c)" and that "the claims of those not so notified shall be allowed," there is no uncertainty about the claims to which the Board

7

was referring. In the LIRR's own words, "over 7,500 claims" amounting to "approximately $1.3 million" were in dispute; and PLB 6846 unambiguously determined that the LIRR must pay these 7,500-plus claims. As far as the court is aware, PLB 6846 did not know about the Prior Awards or the possibility that PLB 6846's determination may conflict with those earlier awards for the simple reason that neither party raised the Prior Awards to the Board.[3] Thus, as far as PLB 6846 was concerned, its Award encompassed all of the 7,500-some claims that both parties had agreed were in dispute. The LIRR's alleged confusion concerning which claims the Union demanded payment on does not translate into an ambiguity in PLB 6846's Award.

Therefore, the instant dispute does not involve a question concerning the interpretation of PLB 6846's Award, and the court does not lack subject matter jurisdiction. Accordingly, the LIRR's motion to dismiss on this basis is denied, and the Union's petition to enforce is granted.

---

[3]The Union states that the LIRR did raise Award No. 5 of Public Law Board No. 6517, issued on July 29, 2004, to PLB 6846, but for a reason entirely unrelated to the notion that the prior award may have been controlling with respect to some of the disputed claims then before PLB 6846.

## III. Conclusion

For all of the foregoing reasons, the LIRR's motion to dismiss for lack of subject matter jurisdiction is denied. The Union's petition to enforce the arbitration award is granted. The Union also is awarded reasonable attorneys' fees, pursuant to 45 U.S.C. 153 First (p). The Union is directed to file a proposed order of judgment for the court's approval within ten (10) days of the date of this Order, *i.e.* on or before April 7, 2008.

SO ORDERED.

DATED:    Brooklyn, New York
               March 24, 2008

                                                       _____/s/_____
                                                            DORA L. IRIZARRY
                                                          United States District Judge